NATHAN RABINOWITZ, ASSIGNEE OF MONMOUTH ME-
MORIAL HOSPITAL, A CORPORATION, PLAINTIFF-
RESPONDENT, v. MASSACHUSETTS BONDING AND IN-
SURANCE COMPANY, A CORPORATION, DEFENDANT-
APPELLANT.

Submitted October 29, 1937—Decided January 26, 1938.

For the defendant-appellant, *Henry M. Grosman* (*Felix Rospond,* of counsel).

For the plaintiff-respondent, *Isadore Rabinowitz.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court, Passaic Circuit, in favor of the plaintiff, Nathan Rabinowitz, assignee, and against the defendant, Massachusetts Bonding and Insurance Company, hereinafter called the Insurance Company.

On February 20th, 1930, one Bridget McCormick sustained a serious injury in the course of her employment by one Ernest A. Limburn. At the time of this injury there was in force a policy issued by the Insurance Company to Limburn, protecting him as to his responsibility as an employer under the provisions of the Workmen's Compensation act of New Jersey.

To effect treatment for the injuries sustained, Bridget McCormick was taken to the Monmouth Memorial Hospital, hereinafter called the Hospital, and there received hospitalization from February 20th, 1930, until November 17th, 1930, the date of discharge.

On April 16th, 1930, the Hospital wrote a letter to the Insurance Company, at its branch office in New York, as follows:

"Re: B. McCormick vs. C-23416
E. A. Limburn—C-4

We will be pleased to know the present status of the claim for compensation of the above named patient, as to date we have not received any information from your office, that the account would be taken care of under the compensation laws of this State."

Several days later the Hospital received two letters, each dated April 18th, 1930, written on the stationery of the Insurance Company, and signed "P. E. Brouillet, Compensation Manager." One letter read as follows:

"In re: Bridget McCormick vs. E. A. Limburn
        C-23416
In connection with the above case, which we understand was under your care, the last information we had was that she was still confined in your institution.

In order that our record may be complete and up to date, we would thank you to advise us as to the present status of this case particularly as to whether she is still confined and the present condition of the injury.

In connection with the bill which we received and which we are returning herewith, it is too vague for us to give it any attention and we enclose herewith forms which we request you complete to show the dates of services rendered and the nature of such services to be noted thereon.

Please return the bill to us upon receipt of which we will give it further attention."

The other letter stated:

"In re: Bridget McCormick vs. E. A. Limburn
        C-23416
Supplementing our letter of April 18th, and replying to your letter of April 16th, we will naturally be responsible for reasonable medical services rendered, provided we can get cooperation as to the status of the claimant, particularly as to the progress of her condition and more particularly information relative to findings of a pre-existing condition in the right knee joint."

On April 24th, 1930, the Hospital, in compliance with the requests contained in the letters of April 18th, wrote the Insurance Company a letter inclosing a report of the attending physician and informing it that the patient was still in the hospital.

On August 12th, 1930, the Hospital wrote to the Insurance Company requesting authority to purchase a special splint at a cost of $50. Authorization was given for such purchase by a letter dated September 15th, 1930, written on the same stationery and signed as before stated.

By letter of December 3d, 1930, the Hospital forwarded to the Insurance Company a bill in the amount of $1,124.66, covering hospitalization from February 20th, 1930, to November 17th, 1930. No payment being made, the claim of the Hospital was assigned to the plaintiff, Nathan Rabinowitz, and suit started on June 12th, 1936.

This case was tried without a jury, and it was stipulated by the parties that $1,116 was a reasonable amount to be charged for the services rendered to Bridget McCormack. Copies of letters from the Hospital to the Insurance Company were admitted in evidence without objection; letters from the Insurance Company to the Hospital were admitted over objection by the defendant that there was no proof of any authority in P. E. Brouillet to act for the Insurance Company. No evidence being offered by the defendant, a motion for nonsuit was denied and judgment rendered for the plaintiff in the amount of $1,116, with interest from November 17th, 1930, amounting to $444.54, making a total of $1,560.54. From this judgment the defendant Insurance Company appeals.

Generally, four grounds are stated by the defendant in attacking the judgment below: (1) there was no evidence of authority in P. E. Brouillet, compensation manager, to act for the Insurance Company; (2) no valid and *enforceable* contract was created by the correspondence between the Hospital and the Insurance Company; (3) the charges for services rendered prior to June 12th, 1930, were barred by the statute of limitations; (4) no interest should have been allowed, since the claim was for an unliquidated sum.

Considering the first point raised by the defendant, it appears that the Hospital directed its letters to the branch office of the Insurance Company, and received several replies therefrom, written on the stationery of the Insurance Com-

pany, signed by an apparent officer of the company, and citing the letters of the Hospital as to the particular case concerned. In the absence of contrary evidence submitted by the defendant, the trial court properly admitted the letters written by P. E. Brouillet, compensation manager, and rightly held that Brouillet had authority to act for the Insurance Company as to the particular matter in controversy. *Leunis Co.* v. *Singer,* 102 *N. J. L.* 68; *J. Wiss & Sons Co.* v. *H. G. Vogel Co.,* 86 *Id.* 618.

The defendant next contends that the correspondence between the Hospital and Insurance Company did not create an enforceable contract. There is no question here presented as to the existence of an express contract. The plaintiff's complaint is based upon a request and authorization for services which raised an obligation to pay the reasonable value of such services, and we think that a valid cause of action has been shown.

It is a well established rule of law that when a person, with expectation of remuneration, confers benefits of service or property upon another, under such circumstances that it would be unjust and inequitable for the person receiving the benefits to retain them without compensation therefor, the law will raise a *quasi*-contractual obligation to support a recovery for the value of such benefits conferred. This principle has been considered and applied, in various situations, by the courts of this state. *Bozarth* v. *Dudley,* 44 *N. J. L.* 304; *Disbrow* v. *Durand,* 54 *Id.* 343; *Waldron* v. *Davis,* 70 *Id.* 788, and referred to and held not applicable in *P. Ballantine & Sons* v. *Gulka,* 117 *Id.* 84.

A situation analogous to that in the present c: e may be found in those cases where a physician, summoned by one employe of a company, renders medical service to another. Considering this type of case, Professor Woodward, in his treatise on *quasi*-contracts, page 316, says:

"If, in a particular case, it can be said that the company is under a legal duty to provide the person injured with medical or surgical attendance, the physician is in the position of one who dutifully intervenes in the company's affairs

and performs its obligation. But if the company owes no such duty to the person injured, there is no satisfactory basis upon which it may be held responsible to the physician."

In the instant case, the letters written by the Insurance Company clearly indicate a responsibility, through its policy, to pay for proper medical services rendered to the employe, Bridget McCormack. Further, the letters indicate a recognition of the services being rendered by the Hospital and an authorization to continue the same until recovery was effected. In such case, the Hospital "dutifully intervened" in the affairs of the Insurance Company, and conferred a benefit upon it, for which they are entitled to remuneration to the extent of the reasonable value thereof.

Hospitalization was given to the employe from February 20th, 1930, until November 17th, 1930. Since suit was not started until June 12th, 1936, the defendant contends that all charges made for services prior to June 12th, 1930, are barred by the statute of limitations.

In order to sustain the defendant's contention it would be necessary to find that each day of hospitalization rendered to Bridget McCormack represented a separate transaction. It clearly appears, however, that the Insurance Company did not contemplate that service would be given day by day, but that treatment would continue over such period of time as would be necessary to effect recovery. Accordingly, the claim of the Hospital matured at the time of the patient's discharge on November 17th, 1930, and the statute of limitations has no application.

Defendant contends that interest should not have been allowed since the amount of damages was unliquidated, and we think this point is well taken. *Horst Co.* v. *Breidt City Brewery,* 94 *N. J. L.* 230, *&c.*

Plaintiff has sued for the reasonable value of the benefits conferred, and until such value was determined by verdict, there was no known amount upon which interest could be computed. The stipulation of the parties as to the reasonable value of the services merely relieved the trial court from the burden of determining this fact.

The judgment will not, however, be reversed for this error. If the plaintiff will waive this item of interest, viz., $444.54, the judgment will be affirmed, without costs on this appeal; otherwise it will be reversed, to the end that a new trial be awarded as to damages alone. *Philbrick* v. *Mundy*, 93 *N. J. L.* 43; *Horst Co.* v. *Breidt City Brewery, supra,* and *Frank J. Bloom Co.* v. *Kuemmerle Corp.,* 104 *Id.* 549, approved and followed on this point.

*For affirmance*—THE CHANCELLOR, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14.

*For reversal*—None.

*For modification*—THE CHANCELLOR, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14.