256 N.J. Super. 355 (1992)
606 A.2d 1163
KINLEY PHYSICAL THERAPY SERVICES, INC., PLAINTIFF,
v.
HYMAN & ADELE KRAMER, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided April 2, 1992.
Russell H. Hulsizer, for plaintiff.
Hyman & Adele Kramer, pro se defendants.
*356 MATHIAS E. RODRIGUEZ, J.S.C.
Defendant, Hyman Kramer ("Kramer"), suffered a work-related injury while working for his employer, Sylvan Piping. Because of this injury, on August 18, 1989, defendant filed workers' compensation claim number XX-XXXXXX. At present, that claim is still pending final decision by the Workers' Compensation Court. After filing the claim, Kramer sought medical treatment at the Kinley Comprehensive Center for Acupuncture and Physical Therapy ("Kinley"). These services occurred during September and October of 1989. The record is unclear as to whether Kramer sought this treatment of his own volition or if he was directed to Kinley by CNA Insurance Company ("CNA Insurance"), the employer's workers' compensation carrier.
On July 23, 1991, Kinley filed suit in this court against Kramer for $742.25. This amount represented the services provided to the defendant. Kramer failed to answer the complaint and on September 23, 1991 went into default. The defendant now seeks to vacate default. This Court recognizes the defendant's excusable neglect. His meritorious defense is that this action is a workers' compensation claim and, therefore, this court has no jurisdiction to decide the matter.
In opposition, plaintiff argues that they are not required to bring this action before the Division of Workers' Compensation. In support of this contention, plaintiff cites N.J.S.A. 34:15-8,[1] *357 the Election Surrender Statute, which prohibits an employer and employee from pursuing any common-law remedy once the workers' compensation claim has been filed, and limits jurisdiction to the Division of Workers' Compensation. Plaintiff argues that since medical providers are not included in that statute, they are free to seek a common-law remedy against the defendant.
It is true that medical providers are not included in the Election Surrender Statute. However, a detailed review of the Workers' Compensation Act ("Act"), relevant case law, and the policy underlying judicial review of administrative agencies, indicates that the proper forum for this action is the Division of Workers' Compensation.

A. Medical Benefits under the New Jersey Workers' Compensation Act
In reaching its conclusion, this court takes notice of the purpose and practice of the workers' compensation system.
The underlying goal of the workers' compensation system is to "relieve the injured employee of the burden of paying for his own medical care and to replace his lost wages ..." 38 N.J.Practice (Gelman, Workers' Compensation) (1988), Section 1 at 1 (Emphasis added).
In relieving the employee's medical burden, the Workers' Compensation Act provides a definite process by which an injured employee may obtain medical treatment. That system is described in N.J.S.A. 34:15-15. Under the statute, the employer is required to provide the worker "such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury ..." The employer's duty to provide such medical care under the Act *358 is absolute. See Benson v. Coca Cola, 120 N.J. Super. 60, 293 A.2d 395 (1972); De Asio v. Bayonne, 62 N.J. Super. 232, 162 A.2d 596 (1960).
The procedure by which an employee obtains medical treatment under the Workers' Compensation Act is well established. Upon the employee's filing of a workers' compensation claim, the employer is then entitled to select the providers of medical care for the injured employee. See Benson, 120 N.J. Super. at 66, 293 A.2d 395. Under the Workers' Compensation Act an employee is required to obtain authorization from the employer prior to obtaining medical treatment from the employer chosen medical provider. However, if the employee requires emergency medical care, then the employee is not required to obtain the employer's authorization under N.J.S.A. 34:15-15.
Upon hearing the employee's claim, the workers' compensation tribunal is responsible for determining whether an employer is required to pay for the employee's medical treatment. Expenses for treatments that are authorized by the employer are chargeable to the employer. Additionally, if the actual treatment provided is determined to have been reasonable and necessary for the employee's injury, then the treatment is compensable and the employer will be liable to the medical provider. This is based upon the employer's absolute duty to pay for compensable treatment. If the employer refuses to pay the medical provider, the medical provider may enforce payment through the Division of Workers' Compensation. The medical provider will have standing to enforce payment if the employee had previously filed a claim. "The rights of a physician to recover fees in a compensable claim are derivative, that is, there must first have been compensation claim proceedings initiated by the employee or employer." 2A Larson, Workers' Compensation Law Section 61.12(k) (1987). Additionally, the Workers' Compensation Code provides the Division with the authority to award a fee to a medical provider for treatment *359 provided to an employee.[2]
Based on the above findings, it follows that a medical provider may only press a claim against an employee after the Division of Workers' Compensation determines the treatment to be non-compensable.
While the compensation proceedings are in progress, if it turns out that the claim was not compensable, and that the employee is to be ultimately liable for the fees, the physician or hospital has been protected by a holding that the statute of limitations is tolled during the pendency of the claim.
2A. Larson, Workmen's Compensation Law Section 61.12 (1987).
Therefore, it is clear that Kinley can not presently bring an action against the defendant in this Court. The plaintiff must first await the decision of the Division of Workers' Compensation. If the treatment is determined to be compensable, the plaintiff's only right to recovery is against the employer's carrier. Thus, CNA Insurance would have the absolute duty to cover the costs. In that case, Kinley would have standing to enforce payment through the Division of Workers' Compensation. If the treatment is determined to be non-compensable then, and only then, may the plaintiff bring an at-law action against the injured worker. As the following discussion indicates, this conclusion is consistent with those of other jurisdictions.

B. Case Law Relevant to Medical Benefits
While no New Jersey case dealing specifically with the issue at bar has been discussed, a holding by this court for the defendant is consistent with the law of other jurisdictions. This issue was previously discussed in Smith v. Stephenson, 641 S.W.2d 900 (Tex. 1982). In Smith, a chiropractor brought a *360 common law action against an employee for reimbursement for services rendered in connection with a compensable work-related injury. The lower court granted judgment in favor of the chiropractor. On the employee's appeal, the Texas Supreme Court reversed. The Court found that the employee had a contractual obligation to the medical provider. However, that obligation was found to be secondary to the primary obligation of the employer created by the Act. Specifically, the Court held that "[t]he employee is liable for ... medical bills, but his liability is contingent upon a finding by the [Workers' Compensation] board ... that the carrier is not obligated." Smith, 641 S.W.2d at 902.
Another case relevant to the issue at bar is Ellis Hospital v. Symonds, 96 Misc.2d 643, 409 N.Y.S.2d 630 (1978). In Ellis Hospital, the hospital sought compensation directly from the employee for medical services rendered. In reaching its conclusion the court first interpreted the purpose of the workers' compensation system:
A liberal construction demands that ... the Workmen's Compensation Law be construed so that hospitals as well as physicians be required to look to the employer rather than the employee for payment for services; in the instant case, this was done. Allowing a hospital to directly collect from a workmen's compensation claimant could put a staggering burden on his shoulders during a possibly lengthy claim dispute. Such a result would defeat the beneficent purpose of the legislation.
Ellis Hospital, 409 N.Y.S.2d at 632.
The Ellis Court ultimately held that the hospital was entitled to seek payment once the Workers' Compensation Board determined that the treatment was not compensable.
Thus, this court's holding for the defendant is consistent with other jurisdiction's interpretations of workers' compensation law.

C. Underlying Policy of Judicial Review
Finally, while the case at bar does not directly raise the issue of judicial review of an administrative agency decision, a review *361 of this area is helpful in understanding the relationship which exists between administrative agencies and the courts.
Ordinarily, in New Jersey a party must exhaust any available administrative remedy before resorting to the courts... The exhaustion doctrine is applied to direct litigants to pursue the less expensive, informal, and more expeditious administrative remedy before pursuing any court remedies. It is also designed to prevent premature judicial interference in the agency process.
Courts require exhaustion for a number of reasons. First, the body possessing expertise in the area should preliminarily focus on the parties' complaints. Second, the administrative agency will be able to develop a thorough factual record which will be helpful in the judicial review. Also, the parties may be satisfied by the administrative resolution and thus obviate any necessity for judicial review.
37 N.J.Practice (Lefelt, Admin. Law and Practice) (1988) Section 311 at 309-310. To allow plaintiff's action in this court at this time would contradict the above policy considerations. The Division of Workers' Compensation has greater expertise in dealing with issues of medical compensability in Workers' Compensation matters than a court of law. Additionally, if the plaintiff eventually brings an action against Kramer in this court, the court will then benefit from the agency's factual transcript. Finally, it is quite likely that the plaintiff's complaint will be remedied by the Division of Workers' Compensation.

D. Conclusion
This court finds that it does not have jurisdiction to hear this dispute at this time. If the Division of Workers' Compensation determines that this claim is not compensable, this court may then hear the merits of this case. Therefore, the defendant's motion to vacate default is granted and the matter is transferred to the Division of Workers' Compensation for consideration.
NOTES
[1] N.J.S.A. 34:15-8 reads:

Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.
If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
[2] N.J.A.C. 12:235-6.16 states:

A judge of compensation conducting an informal hearing may allow a fee to a physician for medical services rendered to a claimant for the term of a compensable injury, unless such treatment was not ordered or authorized by the employer or carrier.