275 N.J. Super. 303 (1994)
645 A.2d 1282
WEST JERSEY HEALTH SYSTEM, PLAINTIFF-RESPONDENT
v.
GARY J. CRONEBERGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 4, 1994.
Decided August 9, 1994.
*305 Before Judges KING, ARNOLD M. STEIN and A.A. RODRIGUEZ.
Evans & Yaskin, attorneys for appellant (Richard E. Yaskin, on the brief).
Freeman, Mintz, Hagner & Deiches, attorneys for respondent (Daniel T. Brennan, on the brief).
The opinion of the court was delivered by A.A. RODRIGUEZ, J.S.C. (temporarily assigned).
*306 The main issue presented is whether the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -128, bars a medical provider from suing an employee for an unpaid bill resulting from a work-related injury where the employer failed to carry workers' compensation insurance. We hold that it does not. However, public policy mandates that execution should not issue until the employee has made a claim to the Uninsured Employer's Fund (UEF) for payment of medical benefits pursuant to N.J.S.A. 34:15-120.2, and the UEF determines whether or not to make the payment.
Gary Croneberger was employed by Maple Aluminum Products, Inc. (Maple), which is no longer in business. On January 31, 1984, and again on May 4, 1984, he sustained injuries while working for Maple. He filed a petition with the Division of Workers' Compensation seeking compensation for his injury. Maple did not carry workers' compensation insurance as required by N.J.S.A. 34:15-71.
Four years after the filing of his petition, Croneberger was admitted to West Jersey Health System (West Jersey) for out-patient surgery to transplant the tendon in his left hand. He claimed that the treatment was necessary as the result of his May 1984 injury. At that time, he was no longer employed by Maple. He did not obtain authorization from Maple to have the surgery. On West Jersey's admission form Croneberger wrote that he was "self-employed and self-insured." West Jersey's bill for his surgery was $1,526.64.
Three years later a judge of compensation found that Croneberger had suffered a compensable injury and awarded temporary and permanent disability. The judge also ordered that Maple pay all treatment expenses, including the West Jersey bill. The record suggests that Maple's failure to carry insurance delayed the resolution of the claim in the Division and the award of compensation. The award was reduced to a Superior Court judgment and execution against Maple issued.
*307 In September 1991, three years after the surgery, West Jersey filed an action against Croneberger to recover for the unpaid bill. Croneberger filed an answer and moved for summary judgment arguing that the workers' compensation law barred West Jersey's action. In the alternative, Croneberger moved for leave to amend the complaint to join Maple and Thomas Howey, its president and sole shareholder, as third party defendants. West Jersey cross-moved for summary judgment claiming that Croneberger was contractually liable to the hospital for services rendered and that the suit was not barred by the Act. The judge granted West Jersey's motion, ruling that the workers' compensation law had no effect on West Jersey's rights, and denied Croneberger's motion to join Maple and Howey in the action.
Croneberger argues that: (1) he cannot be held liable for a medical treatment bill which the Division of Workers' Compensation has found to be the responsibility of his employer; (2) there is no legal or factual basis for the conclusion that his representations upon admission to West Jersey waived his statutory right to workers' compensation medical benefits; and (3) the trial judge erred in failing to permit Croneberger to join Maple and Howey to the action.[1] We disagree with the first contention, but agree with the third. The second one is moot.

I
The motion judge correctly concluded that the provisions of the Act do not affect the contractual liability between an injured employee and a provider of medical services. The prohibition of N.J.S.A. 34:15-8, which bars employees and employers from pursuing any common law remedy, does not extend to the medical provider. Likewise, N.J.S.A. 34:15-15, which imposes upon the *308 employer the obligations to pay for compensable hospital services, governs only the responsibilities between employer and employee.
However, our analysis cannot end there. The goal of the workers' compensation laws is "to relieve the injured employee of the burden of paying for his own medical care and to replace his lost wages...." 38 Jon L. Gelman, New Jersey Practice, Workers' Compensation Law § 1, at 1 (1988). "[T]he beneficent social purposes of workmen's compensation legislation are to be reflected by the benefits of liberal construction in the petitioner's favor." Benson v. Coca Cola Company, 120 N.J. Super. 60, 64-65, 293 A.2d 395 (App.Div. 1972).
In order to obtain medical treatment an injured employee must first demand treatment from the employer. N.J.S.A. 34:15-15. If the employer refuses or fails to provide medical treatment, then the employee may seek medical treatment. Ibid. The employee is not required to demand medical treatment if such a request would be futile. Benson, supra. 120 N.J. Super. at 64-65, 293 A.2d 395. If the employee obtains medical treatment on his own, the employer may be held liable to the medical provider for treatment costs. Stafford v. Pabco Products, Inc., 53 N.J. Super. 300, 304-05, 147 A.2d 286 (App.Div. 1958) ("parties who furnish medical or hospital services to employees were intended to have enforceable rights to reimbursement by the employers under R.S. 34:15-15 in workmen's compensation proceedings.").
The clear legislative intent of the Act is that an employee should not have to pay for medical treatment for injuries arising out of and in the course of employment unless there is no other available source of payment. Kinley Physical Therapy Services, Inc. v. Kramer, 256 N.J. Super. 355, 606 A.2d 1163 (Law Div. 1992), supports the proposition that the employee is the last source of payment for work-connected medical expenses. While the employee's workers' compensation claim was pending, the health care provider filed suit against the employee seeking payment for medical services rendered. The judge concluded that a medical *309 provider could assert a claim against the employee only after it is determined that the treatment is non-compensable. He said:
[I]t follows that a medical provider may only press a claim against an employee after the Division of Worker's Compensation determines the treatment to be non-compensable. "While the compensation proceedings are in progress, if it turns out that the claim was not compensable, and that the employee is to be ultimately liable for the fees, the physician or hospital has been protected by a holding that the statute of limitations is tolled during the pendency of the claim." 2 Larson, The Law of Workmen's Compensation, § 61.12 (1987).[2]
[Kinley, supra, 256 N.J. Super. at 359, 606 A.2d 1163].
If the employer is uninsured, unwilling or unable to pay, the Legislature has provided the UEF as a source of payment to protect the employee from bearing the cost of medical care for work-related injuries. The Uninsured Employer's Fund (UEF) provides payment of workers' compensation awards, including medical payments to an employee, against uninsured defaulting employers who fail to compensate employees. N.J.S.A. 34:15-120.1 to 15:120.14. The UEF provides payment for certain medical benefits entered against uninsured defaulting employers. N.J.A.C. 12:235-14.1(a). If an employer fails to pay a compensation award within forty-five days of its entry or refuses to deposit the commuted or estimated value of the compensation payable under the award as security within ten days, the award shall be payable out of the UEF. N.J.S.A. 34:15-120.2.
The judge of compensation determined that West Jersey's services were reasonable and necessary as a result of a compensable injury. The record does not reflect whether Croneberger filed a claim with the UEF. If he did and received payment, then West Jersey can immediately execute on this judgment. If Croneberger has not made application, he may do so within thirty days from the filing date of this opinion. N.J.A.C. 12:235-14.2(a) requires that, "the petitioner's attorney shall notify the Fund that benefits will be sought from the Fund within 45 days of the date either petitioner or his or her attorney knows or should have known that the employer is uninsured. This time period may be *310 extended for good cause shown." We are satisfied that Croneberger has diligently pursued this claim against his employer and thus we think he should be permitted to make a claim to the UEF at this time. Public policy regarding our system for compensating injured workers requires that all other sources of payment for medical services be exhausted before the employee's assets can be reached. Until the claim is processed and paid or denied by the UEF, execution will be stayed.

II
Croneberger also claims that the judge's denial of his motion to amend exposed him to preclusion of a claim against Howey under the entire controversy doctrine, R. 4:30A. We agree. By virtue of N.J.S.A. 34:15-79, Howey, Maple's president, is personally liable for benefits. The claim against him should be litigated in the context of this action. Therefore, the motion for leave to join Howey as a third party defendant should have been granted. R. 4:8-1; see Newmark v. Gimbel's Inc., 54 N.J. 585, 600-601, 258 A.2d 697 (1969).
The judgment in favor of West Jersey is affirmed with the restrictions specified in this opinion. The order denying Croneberger's motion to file a third party complaint against Thomas Howey is reversed. As it pertains to Maple, the order is affirmed since there already exists a judgment against Maple. The matter is remanded to the Law Division, Special Civil Part, Camden County.
NOTES
[1] Croneberger unsuccessfully moved for reconsideration. He appealed the denial but did not brief the issues. Therefore, it is deemed waived. Pressler, Current N.J.Court Rules, comment on R. 2:6-2 (1994).
[2] Section 61.12(k) at 10-908 to 910 in the 1992 edition.